*UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF COLUMBIA*

**ELBERT LEROY DAGE,**     )
     )
    **Plaintiff.**     )
     )
   **v.**     )     **Civil Action No. 04-0221 (JGP)**
     )
**MICHAEL O. LEAVITT,**     )
**Administrator, Environmental**     )
**Protection Agency**     )
     )
    **Defendant.**     )
     )

## MEMORANDUM OPINION

This comes before the Court on **Defendant's Motion for Judgment on the Pleadings, or in the Alternative for Summary Judgment [#44]** ("Def.'s Mot.").[1] The Environmental Protection Agency ("EPA" or "Agency") moves for dismissal of the Complaint on the grounds that Elbert Leroy Dage failed to exhaust his administrative remedies with respect to his administrative Complaint ("EEO Complaint"), and failed to set forth sufficient facts to support his discrimination and retaliation claims. Def.'s Mot., at 1. Within Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings, or in the Alternative for Summary Judgment and Request for Oral Hearing [#51] ("Pl.'s Opp."), Dage argues that the Court should not dismiss his Complaint because he exhausted his administrative remedies, and there are material facts which remain in dispute. Pl.'s Opp., at 1.

The Court concludes that the instant Motion should be granted because Dage has failed to

---

[1] Hereinafter, when citing the Memorandum of Points and Authorities in Support of Defendant's Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment, the Court will use the abbreviation "Def.'s Memo."

exhaust some of his administrative remedies, and where he has not, there are no material facts in dispute which merit his case proceeding to trial.  The Court's conclusions are fully explained below.

## BACKGROUND

Dage, who holds a masters degree in civil engineering from Howard University, was hired by the EPA in 1975 at grade 7. Complaint and Jury Demand ("Complaint"), at ¶¶ 10-12; *accord* Answer, at ¶¶ 10-12.  He currently works at the Agency as an Environmental Scientist within the Existing Chemicals Assessment Branch of the Risk Assessment Division in the Office of Pollution Prevention and Toxics ("OPPT") in the Office of Prevention, Pesticides and Toxic Substances ("OPPTS"). Complaint, at ¶ 11.  Having consistently received promotions, above-average performance ratings and numerous awards throughout his tenure at the EPA, Dage was promoted to grade 13 on September 7, 1980, where he remains today. *Id*. at ¶ 12.

Dage was injured during the late 1980's by his occupancy of office space at the Agency's Waterside Mall headquarters facility. Answer, at ¶ 15; *see* Complaint, at ¶ 15.  It is Dage's contention that he was injured specifically due to exposure "to chemicals and toxins from the installation of new carpeting and to microorganisms" at the Waterside Mall facility, "including mold and bacteria in the Heating Ventilation Air Conditioning ('HVAC') system." Complaint, at ¶ 15.  As a result, Dage further contends that from roughly January 1988 to the present,

> [he has] experienced eight episodes of upper respiratory infections[,] . . . . symptoms of allergy and asthma[,] . . . . Anaphylaxis[,] . . . . coughing, watery eyes, sinus irritation, drowsiness, [] repetitive sneezing, difficulty breathing, dermatitis, rashes, redness of the skin, itching, fatigue, eye irritation, headaches, hives, runny nose, throat itch and drainage, itching in the ears, and bronchitis.

Complaint, at ¶¶ 17, 25, 27; *see also* Answer, at ¶ 17 ("[S]ome time in 1989, Plaintiff began

reporting respiratory issues to the EPA Health Unit, where his complaints were documented.");

Affidavit of Elbert Leroy Dage, November 7, 2001 ("Dage Affid."), at 6 (same).

Dage underwent a series of medical evaluations in the EPA Health Unit at Waterside

Mall in early 1989, and was diagnosed, *inter alia*, as demonstrating "mild obstructive disease[.]"

Dage Affid., at 3.  He was also diagnosed at the Health Unit shortly thereafter as having

"probable atopy, allergic rhinitis, history of hypersensitivity pneumonitis, and 'Tight Building'

symptoms." Complaint, at ¶ 18; *accord* Answer, at ¶ 18.  Dage sought outside medical treatment

in 1990 from Dr. Edward Yanowitz, a physician at the George Washington University Medical

Center. *See* Dage Affid., at 4-5; Letter Written by Dr. Edward Yanowitz, July 6, 2001

("Yanowitz Letter"), at 1.  Dr. Yanowitz  provided a clinical assessment, which Dage then

presented to his supervisors at the EPA, stating that because of the severity and permanency of

his disability[2], it was essential for him to be removed from the Waterside Mall facility for the

duration of his employment. *Id*. at 5.

Later in 1990, Dage requested emergency relief from flooding, mold, and dust in his

office in the Waterside Mall facility. Dage Affid., at 11.  His immediate supervisor granted this

request for reasonable accommodation by arranging for the removal of carpeting and re-tiling the

filtration machine in Dage's office. *Id*.  On July 11, 1991, Dage formally requested temporary

Alternate Work Space ("AWS") relocation to the EPA's Crystal Station location because his

---

[2]  Dage describes his disability as being "chronic retroactive airway disease, asthma,
severe allergies, and anaphylaxis." *Id*. at 1.

respiratory problems were worsening with his continued presence at the Waterside Mall facility.[3] Complaint, at ¶ 23.  The EPA relocated him to the Crystal Station site effective July 31, 1991, Answer, at ¶ 23, which Dage has also characterized as a reasonable accommodation. Dage Affid., at 12.  One month later, Dage requested an answering machine, as well as a computer and printer to use in his temporary office in Crystal Station. Dage Affid., at 12.  The EPA granted this accommodation request as well, also arranging for direct delivery of mail to Dage at Crystal Station. *Id*.  Despite the relocation and fulfillment of a number of other reasonable accommodation requests, however, the Agency required Dage to return to the Waterside Mall facility several times each week on work-related matters from August 1991 to August 1993. *Id*. Dage formally requested that his relocation to Crystal Station be made permanent in July of 1993, which his EPA supervisor also granted. *Id*. at 13.

On August 1993, the EPA has further reasonably accommodated Dage by allowing him to attend "any meetings" held in the Waterside Mall facility by teleconference, and also by arranging for personnel to "routinely" bring items which Dage needs out of the building to him. *Id*.  The Agency also provided Dage the reasonable accommodation of restructuring his job because Crystal Station is not a Toxic Substance Control Act Confidential Business Information-secured area. *Id*. at 15.

On February 1, 1999, the EPA implemented a new AWS Policy.[4] Complaint, at ¶ 46.

---

[3]  "AWS is an arrangement allowing employees to perform work from either their home using telephone and computer equipment or from a specially equipped EPA office space designed to minimize potential exposures to chemicals, allergens and indoor air pollution. EPA established such an AWS at Crystal Station in Arlington, Virginia." Complaint, at ¶ 20.

[4]  When referencing this policy, the Court will use the abbreviations "1999 AWS Policy" and "new AWS Policy."

Among other things, the 1999 AWS Policy requires that its participants submit medical examinations "within the first six months of the policy and thereafter at least once every two years . . . ." *Id*. at ¶ 68; *accord* Answer, at ¶ 68 ("[A]ny employee desirous of continued occupancy of AWS space must submit a bi-annual recertification, supported by medical evidence, demonstrating that he/she is still unable . . . to occupy his/her regular assigned office space.").

On September 2, 1999, Dage filed an administrative Complaint which alleges, *inter alia*, that before enactment of the 1999 AWS Policy, he had been receiving reasonable accommodation through the former AWS policy "since 1991." EEO Complaint, at 2; *see* Statement of Material Facts Not in Genuine Dispute ("Def.'s Fact Statement"), at ¶ 3. The administrative Complaint also alleges that the new AWS Policy "discriminated and retaliated against him and other EPA employees as a result of their disabilities[.]" Def.'s Fact Statement, at ¶ 4; *accord* EEO Complaint, at 2. The Agency dismissed Dage's administrative Complaint in March of 2000.[5] *See* Def.'s Fact Statement, at ¶¶ 6-7.

On February 12, 2004, Dage filed his Complaint which alleges that the 1999 AWS Policy violates the Federal Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701, et seq. ("the Rehabilitation Act" or "the Act") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"). Complaint, at ¶ 1. The EPA filed its Answer on April 29, 2004.

---

[5]  Although the Equal Opportunity Employment Commission ("EEOC") remanded Dage's case to the EPA, *id*., it "issued no decision" as of the filing of the instant action. Complaint, at ¶ 7; *accord* Answer, at ¶ 7.

**STANDARD OF REVIEW**

A motion for judgment on the pleadings is appropriately granted "only if, after the close of the pleadings, no material fact remains in dispute, and the moving party is entitled to judgment as a matter of law." *Transworld Prods. Co. v. Canteen Corp*., 908 F. Supp. 1 (D.D.C. 1995) (citing *Peters v. Nat'l R.R. Passenger Corp*., 296 U.S. App. D.C. 202, 204, 966 F.2d 1483, 1485 (D.C. Cir. 1992); Fed. R. Civ. P. 12(c)).  "The standard of review on a motion for judgment on the pleadings is virtually identical to the standard for a motion to dismiss." *Id*. at 2 (citing *UPS v. Int'l Bhd. of Teamsters*, 859 F. Supp. 590, 592 & n.1 (D.D.C. 1994); Fed. R. Civ. P. 12(c), 12(b)(6); (other citation omitted)).  That is, "[t]he Court will not dismiss plaintiff's complaint unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle plaintiff to relief." *Id*. (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957) (other citation omitted)).  Further, under this standard, "[t]he Court must accept as true all factual allegations and *all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party*." *Id*. (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984) (other citations omitted) (emphasis added)).  When considering a motion for judgment on the pleadings, "[t]he Court may not consider evidence 'outside the scope of the complaint.'" *Gasser v. Ramsey*, 125 F. Supp. 2d 1, 3 (D.D.C. 2000) (quoting *Terry v. Reno*, 322 U.S. App. D.C. 124, 135, 101 F.3d 1412, 1423 (D.C. Cir. 1996)).

Similar to a motion for judgment on the pleadings, a motion for summary judgment "may be granted only if the pleadings and evidence 'show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Paquin v. Fannie Mae*, 20 F. Supp. 94, 95 (D.D.C. 1998) (quoting Fed. R. Civ. P. 56(c)).  "In

considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered *in the light most favorable to the nonmoving party*." *Id*. (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (emphasis added)).   Notwithstanding, "'the mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff to defeat a motion for summary judgment." *Id*. (quoting *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986) (brackets in original)).   Finally, when considering a motion for summary judgment, unlike a motion for judgment on the pleadings, the Court is not limited to reviewing evidence within the scope of the complaint. *Id*.; *see also Gasser*, 125 F. Supp. 2d at 3.

## ANALYSIS

### I.      Exhaustion of Administrative Remedies

The Court first addresses the EPA's exhaustion argument.  Specifically, the Agency argues that claims one and two of the Complaint should be dismissed, and claims three and four should "be limited solely to the issue regarding the adoption of the 1999 AWS policy . . . ." Def.'s Memo, at 7.  From the EPA's perspective, Dage did not allege during the administrative phase that the Agency failed to reasonably accommodate his disability, "nor did he allege that he was discriminated or retaliated against *prior to the adoption of the 1999 AWS policy*." *Id*. at 8 (emphasis added).  Dage counters that the Court should not dismiss or limit the four claims because they "are like or *reasonably related* to the allegations in his administrative Complaint" such that "defendant was *on notice* of the claims." Pl.'s Opp., at 3 (emphasis added); *see Loe v. Heckler*, 247 U.S. App. D.C. 292, 300, 768 F.2d 409, 418 (D.C. Cir. 1985).  According to Dage,

7

his administrative complaint is "considerably broader" than the AWS policy. Pl.'s Opp., at 3.

Despite Dage's interpretation of the breadth of the administrative Complaint, the Court is not

convinced that its plain language could have reasonably put the EPA on notice that he would

bring suit regarding events which occurred prior to the new AWS Policy's adoption date of

February 1, 1999.

In *Loe*, the D.C. Circuit reiterated that administrative agencies must have "notice" of a

plaintiff's allegation, "and a fair opportunity to provide full redress or to attempt an informal

accommodation." 247 U.S. App. D.C. at 300, 768 F.2d at 418 (other citations omitted); *see*

*Bolden v. Ashcroft*, 2005 U.S. Dist. LEXIS 16874, at *6 (D.D.C. July 15, 2005) (dismissing on

exhaustion grounds "plaintiff's claims based upon *theories that did not appear in the*

*administrative complaint* . . . . " (emphasis added)); *Miller v. Smith*, 584 F. Supp. 149, 154

(D.D.C. 1984) (same).  Put differently, a plaintiff must have "exhausted his administrative

remedies" before a claim can properly be considered by a Court.[6] *Broderick v. Donaldson*, 369

U.S. App. D.C. 374, 374, 437 F.3d 1226, 1226 (D.C. Cir. 2006).

Returning to the facts of the instant case, claim one of Dage's Complaint, entitled,

"Failure to Recognize Plaintiff as Disabled," encompasses events which occurred from

approximately 1989 to 2004. *See* Complaint, at ¶ 95 ("[D]efendant refused to recognize plaintiff

as disabled under the Rehabilitation Act *for 14 years*." (emphasis added)).  Claim two, entitled,

"Failure to Provide Reasonable Accommodations for Disability," also pertains to events

beginning in 1989. *Id*. at ¶¶ 97-98.  While claims three and four of the Complaint, entitled,

---

[6] This "basic demand on the complainant" still persists even when "the agency [is] given
. . . technically flawed[] notice of the grievance." *Bethel v. Jefferson*, 191 U.S. App. D.C. 108,
121, 589 F.2d 631, 644 (D.C. Cir. 1978).

"Disability Discrimination" and "Retaliation" respectively, do not specifically make reference to

a time period in which Dage alleges his injuries occurred, both claims nonetheless also appear to

span the 1989 to 2004 time period "[a]s set forth above" in claims one and two. *Id*. at ¶¶ 101,

105.

However, in contrast to the expansive scope of the Complaint, Dage clearly limited his

administrative Complaint to only challenging the "discrimination, retaliation and harassment"

that he and other AWS employees allegedly suffered *because of* the implementation of the 1999

AWS Policy. EEO Complaint, at 2.  And since nothing in the administrative Complaint refers to

events which occurred before February 1, 1999, the EPA by definition had no "notice" of any

grievance predating the new AWS Policy. *Loe*, 247 U.S. App. D.C. at 300, 768 F.2d at 418; *see*

EEO Complaint, at 2 ("*I have been receiving reasonable accommodations* through the

Alternative Workspace [*sic*] . . . policy here at EPA *since August 1991*." (emphasis added)).

Nonetheless, because claims one and two of the Complaint also reference events which occurred

*after* February 1, 1999, and claims three and four are *ambiguous* regarding their exact period of

reference, the Court will consider all four claims, but only to the extent that they pertain to

injuries which Dage alleges were caused by the EPA's adoption of the new AWS Policy.

## II.     Claims Following Adoption of 1999 AWS Policy

The Court next turns to the following arguments advanced by the EPA with respect to

Dage's four claims: the first claim, which alleges failure to recognize Dage as disabled, is not a

cause of action under the Rehabilitation Act; the second claim, which alleges that the EPA failed

to provide Dage with reasonable accommodations, goes beyond the 1999 AWS Policy and

Dage's workstation, and includes allegations "unrelated to his workspace[;]" and with respect to

the third and fourth claims, Dage fails to demonstrate adverse employment action. Defendant's

Reply to Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings or in the

Alternative for Summary Judgment [#61] ("Def.'s Reply"), at 4-16.

In response, Dage asserts the following: the first claim should not be dismissed because

the EPA failed to make a determination that he was "a qualified person with a disability under

the Rehabilitation Act[,]" and therefore failed to provide him with reasonable accommodations

under the law. Pl.'s Opp., at 7-13.  Dage asserts that the second claim should not be dismissed

because since 1999, he has been denied participation in meetings via teleconferencing, denied an

opportunity to participate in a Science Forum, provided "substandard" workstation equipment,

"forced" to purchase a new computer for his home office, and ignored with respect to his request

for a scooter to use at the Agency's Federal Triangle complex. *Id.*  Dage further asserts that

claims three and four should not be dismissed because the administrative Complaint alleges both

disability discrimination and retaliation.[7] Pl.'s Opp., at 7-13.  Below, the Court addresses each of

Dage's claims and the EPA's arguments for their dismissal.[8]

---

[7]  Although not set forth within the "Claims" section, the Complaint also alleges that from June 2000 until November 2001, Jennifer Seed ("Seed"), Dage's immediate supervisor at the EPA, "took all professional substantive work away from [him]" and he was "denied a fair opportunity to compete for promotion to grade 14[.]" Complaint, at ¶¶ 58, 73.  Both of these allegations are addressed below. *See infra* ANALYSIS, II., B.

[8]  The Court notes that some of the authority that it relies upon in addressing the claims are cases in which courts have applied the Americans with Disabilities Act ("ADA"), not the Rehabilitation Act.  However, "[b]y statute, the Americans with Disabilities Act standards apply in Rehabilitation Act cases alleging employment discrimination." *McPherson v. Michigan High Sch. Athletic Assoc., Inc.*, 119 F.3d 453 (6th Cir. 1997).  "If [an individual] may be found to be disabled under the ADA, then []he may be found to be disabled under the Rehabilitation Act." *Pritchard v. Southern Co. Serv.*, 92 F.3d 1130, 1134 (11th Cir. 1996); *accord Dorchy v. Washington Metro. Area Transit Auth.*, 45 F. Supp. 2d 5, 9 (D.D.C. 1999).

A.      **Claim One: Failure to Recognize Plaintiff as Disabled**

The Complaint first challenges the EPA's refusal to recognize Dage as disabled under §§ 501 and 505(a)(1) of the Rehabilitation Act. Complaint, at ¶ 95.  Notwithstanding, Dage provides no authority, and the Court knows of none, which demonstrates that this is a legally cognizable cause of action under either section.

In *Barth v. Gelb*, 303 U.S. App. D.C. 211, 2 F.3d 1180 (D.C. Cir. 1993), the D.C. Circuit discussed the "three . . . various categories of handicap discrimination cases that *may be brought*" under § 501, stating:

> The first is one in which *the employing agency asserts that it refused a job application, or denied an employee a promotion or discharged him*, for reasons unrelated to the person's handicap. . . .  A second category involves suits in which *the employer challenges a plaintiff's claim that he is a qualified handicapped person who, with reasonable accommodation, can perform the essential functions of the position in question*. . . . In these cases, the agency will usually contend that no reasonable accommodation is available. . . . In a third category we have those cases . . . in which *the employing agency offers the affirmative defense of undue hardship on the operation of its program*.

303 U.S. App. D.C. at 217, 2 F.3d at 1186 (citations and internal quotation marks omitted) (emphasis added); *see also Carr v. Reno*, 306 U.S. App. D.C. 217, 222, 23 F.3d 525, 530 (D.C. Cir. 1994) (holding that "section 501 demands a great deal from federal employers in the way of accommodation[,]" including allowing employees to "*work at home*, as well as *reassignment in another position*, as potential forms of accommodation." (emphasis added)).  Further, the Court in *Guinn v. Bolger*, 598 F. Supp. 196 (D.D.C. 1984) explained that the function of section 505(a)(1) is to "establish a *private cause of action* in favor of persons pursuing claims under Section 501 of the Rehabilitation Act . . . ." 598 F. Supp. at 199 (emphasis added).

11

In this case, Dage does not allege that he was refused a job application, denied a promotion[9] or discharged from his job because of the adoption of the 1999 AWS Policy. *Barth*, 303 U.S. App. D.C. at 217, 2 F.3d at 1186.  He also does not allege that following adoption of the new AWS Policy, the EPA challenged his claim that he is "a qualified handicapped person who, with reasonable accommodation, can perform the essential functions of the position in question." *Id*.; *see* EEO Complaint, at 2 ("I am a 'qualified handicapped person with a disability' . . . . I have a record of . . . *management acceptance and acknowledgment*, and *working with reasonable accommodations*." (emphasis added)); *see* Complaint, at ¶¶ 93-94 (same).  And Dage makes no allegation that the Agency put forth the defense of undue hardship on its program as justification for not affording him reasonable accommodation for his disability after it adopted the new AWS Policy.[10] *Barth,* 303 U.S. App. D.C. at 217, 2 F.3d at 1186.  Pursuant to the foregoing legal standard, then, the first claim fails to state a claim. *See Arbaugh v. Y & H Corp.*, –U.S.–, 126 S. Ct. 1235, 1240 (2006) ("A defense of failure to state a claim upon which relief can be granted . . . *may be made in any pleading* . . . or by motion for judgment on the pleadings, or at the trial on the merits." (alterations in original) (emphasis added)).

---

[9]  The Court notes here that Dage claims he was denied the opportunity to compete for a promotion, but in fact he did not apply for a promotion. *See*, *e.g.*, Pl.'s Opp., at 27-29.

[10]  In fact, as Dage himself states, the EPA took the recommended measures under section 501 of allowing him to work at home following the adoption of the new AWS Policy as a form of accommodation. *Carr*, 306 U.S. App. D.C. at 222, 23 F.3d at 530; *accord* Complaint, at ¶ 39 (On "February 13, 2003, [the] EPA reassigned plaintiff to work at home full time as a reasonable accommodation for plaintiff's disability."). Also, some six years before it adopted the new AWS Policy, the Agency permanently reassigned Dage to the AWS site at Crystal Station. *Carr*, 306 U.S. App. D.C. at 222, 23 F.3d at 530; *accord* Dage Affid*.,* at 13 ("My assignment to Crystal Station . . . was made permanent, and I have never been required to re-enter . . . the Waterside Mall office areas.").  In addition to these reasonable accommodations, the EPA also issued Dage handicap parking permits "beginning in December 2002." Complaint, at ¶ 40.

Additionally, the instant claim cannot properly be brought here in this Court because the administrative Complaint does not assert or reasonably relate to the assertion that the EPA failed to recognize Dage as disabled following the adoption of the new AWS Policy. *See generally* EEO Complaint; *see Loe*, 247 U.S. App. D.C. at 300, 768 F.2d at 418; *Bethel*, 191 U.S. App. D.C. at 121, 589 F.2d at 644. Accordingly, the first claim should be dismissed.

**B.     Claim Two: Failure to Provide Reasonable Accommodations for Disability**

It is well-settled that in asserting discrimination based on failure to accommodate, the moving party must establish that "'an accommodation was needed' in order to carry out *the essential functions of the position*." *Bissell v. Reno*, 74 F. Supp. 2d 521, 528 (D. Md. 1999) (quoting *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997) (emphasis added)). "Essential functions" are "the fundamental job duties of a position that an individual with a disability is actually required to perform." *Salmon v. Dade County Sch. Bd*., 4 F. Supp. 2d 1157, 1160-61 (D. Fla. 1998) (citation omitted). "For example, a job function may be considered essential because the reason the position exists is to perform that function[,]" or "a job function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed." *Id*. (citations omitted). Moreover, "*an employer does not have to choose the best accommodation available or the accommodation that the employee prefers*." *Id*. (citations omitted) (emphasis added). Measured against this legal standard, Dage has failed to establish his claim.

Dage asserts that he was prohibited by the Agency from participating in teleconferencing meetings, Pl.'s Opp., at 7, denied "substantive work" from June 2000 until November 2001, Complaint, at ¶ 58, and denied the opportunity to compete for a promotion to grade 14. *Id*. at ¶

73.  Dage also asserts "that he was told by his supervisor [] that he could obtain professional assignments if he worked in a building, *other than the AWS offices*, which are designed to protect persons like plaintiff suffering from exposures to chemicals, allergens, and indoor air pollution . . . ." Pl.'s Opp., at 25 (emphasis added).  The following month, Dage *chose to be assigned* to the Federal Triangle complex. *Id.*  However, he has presented no evidence to the Court that the Federal Triangle complex was injurious to his health in any way. *See generally* Yanowitz Letter. Moreover, Dage has not addressed or disputed the EPA's explanations regarding the preceding assertions within his Statement of Material Facts or other such pleadings, which, if true, would not violate the Rehabilitation Act.  Therefore, the Court treats the following explanations as concessions.

With regard to the teleconferencing meetings, the EPA responds that it suffered problems with its communication system just after OPPT's relocation to the Federal Triangle complex, which "*affected all employees*," but that it has effectively fixed the problem. Answer, at ¶ 80 (emphasis added).  With regard to the work assignments, the EPA responds that Dage "devoted *significant time* working on activities to support the employment of persons with disabilities in OPPT and EPA[,]" and that these assignments were not "voluntary." *Id*. at ¶ 70 (emphasis added).  According to the Agency, Dage received assignments commensurate with his title and level of experience. *See id.*  And with regard to the alleged denial of the opportunity for a promotion, the EPA responds that Dage has had numerous opportunities to compete for a promotion to grade 14, but that he "has *chosen never to compete* for a promotion . . . ." *Id*. at ¶ 73 (emphasis added).  Again, pursuant to the Court's Local Civil Rules, by not addressing or disputing the Agency's above explanations, Dage has constructively "admitted" them. LCvR 7(h)

("In determining a motion for summary judgment, the court may assume that facts identified by

the moving party . . . are admitted, unless such a fact is controverted" by the nonmoving party "in

opposition to the motion.").

Furthermore, Dage has failed to establish that participation in a science forum, a

computer equaling the "new computer" which was stolen from his office[11], or a scooter for him

to use at the Federal Triangle complex are accommodations that he "*needed* in order to carry out

the *essential functions*" of his job. *Bissell*, 74 F. Supp. 2d at 528 (citation and internal quotation

marks omitted) (emphasis added).[12]  Thus, he has not established that these accommodation

requests are reasonable.[13]  Differently put, it appears as if Dage has merely established that the

EPA failed to provide him with "the *best*" accommodations or the accommodations that he

"*prefers*" since adoption of the new AWS Policy. *Salmon*, 4 F. Supp. 2d at 1161 (emphasis

---

[11]  The Court notes that the Agency provided Dage with an older model computer which Dage finds objectionable.

[12]  Dage contends within his Complaint that "[a]lthough EPA provides such scooters to other people with disabilities for their use at the EPA Federal Triangle complex, EPA has not provided this accommodation to the plaintiff." Complaint, at ¶ 11.  He also makes the following contention within his Affidavit: "The AWS policy has a *disparate impact* on one particular group of disabled employees . . . .  Other disabled employees requiring similar accommodations, but the origin of whose disability is not related to working for the EPA, are not subjected to repeated medical testing." Dage Affid., at 29 (emphasis added).  Despite these contentions, "[t]here is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons." *Modderno v. King*, 317 U.S. App. D.C. 255, 258, 82 F.3d 1059, 1062 (D.C. Cir. 1996) (quoting *Traynor v. Turnage*, 485 U.S. 535, 549, 108 S. Ct. 1372, 1382 (1988)).  Moreover, membership in the AWS program is not the same as being disabled under the law.

[13]  In a July 6, 2001 letter submitted to the EPA, Dr. Yanowitz only recommended that Dage remain within the AWS program and use "special equipment to reduce further [] exposure to allergens and respiratory irritants." Complaint, at ¶ 55 (emphasis added)).  Dr. Yanowitz made no mention of a scooter. *See generally* Yanowitz Letter.

added); *see Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000) (explaining that "the use of the word 'reasonable' as an adjective for the word 'accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires.").   In any event, assuming *arguendo* that the Court were to consider the forgoing accommodation requests as necessary for Dage to perform his job, it is also quite clear that they were not first exhausted administratively. *See generally* EEO Complaint; *see Loe*, 247 U.S. App. D.C. at 300, 768 F.2d at 418.  Consequently, the issues which comprise this claim are not properly before the Court. *See Bethel*, 191 U.S. App. D.C. at 121, 589 F.2d at 644.  Thus, the second claim should also be dismissed.

## C.      Claim Three: Disability Discrimination[14]

The Rehabilitation Act prohibits "discrimination against individuals with disabilities by recipients of federal funds." *Chevron U.S.A. v. Echazabal*, 536 U.S. 73, 82 n.4, 122 S. Ct. 2045, 2051 n.4 (2002).  The Supreme Court has "limited the application of the term 'discrimination' in the Rehabilitation Act to a person who is a member of a protected group and faces discrimination 'by reason of his handicap'." *Olmstead v. L. C. by Zimring*, 527 U.S. 581, 619, 119 S. Ct. 2176, 2196 (1999) (citation omitted).  The purpose of the Act "is to guarantee that individuals with disabilities receive *evenhanded treatment* relative to those persons without disabilities." *Id.* at

---

[14]   The Court notes at this point in the analysis that unlike claims one and two of the Complaint, Dage does raise the *general* issues which comprise claims three and four, *i.e.*, disability discrimination and retaliation, within the administrative Complaint. *See* EEO Complaint, at 2 ("EPA has subjected me and other AWS employees to *discrimination*, harassment and *retaliation* for engaging in protected activities." (emphasis added)).  For this reason, these claims are properly before the Court. *Bethel*, 191 U.S. App. D.C. at 121, 589 F.2d at 644.

620 (citation and internal quotation marks omitted) (emphasis added).[15]

Preliminarily, all parties to this action are in agreement that Dage qualifies as disabled within the meaning of the Rehabilitation Act. *See* Seed Aff., at 2 ("Yes, I knew [Dage] had a disability prior to February 1, 1999.  When I became his immediate supervisor we talked about his disability.").  "The term 'individual with a disability' is defined by 29 U.S.C. § 705 (20)(B) to mean 'any person who . . . has a physical or mental impairment which substantially limits one or more of the person's major life activities . . . .'" *E.g.*, *Boone v. Reno*, 121 F. Supp. 2d 109, 111 (D.D.C. 2000) (citation omitted) (alterations in original).  Also, it appears that all participants in the AWS program do not necessarily qualify as "disabled" under the Rehabilitation Act because the 1999 AWS Policy does not explicitly or implicitly require its participants to have "a physical or mental impairment which substantially limits one or more of the [participant]'s *major life activities*[.]" *Boone*, 121 F. Supp. 2d at 111 (emphasis added); *see* Answer, at ¶ 47 ("The standard for being disabled under the Rehabilitation Act is that an individual suffer from a serious impairment in one of life's major activities, and . . . a person who simply is unable to work from Waterside Mall . . . would not satisfy this test."); *see also* Complaint, at ¶ 20.

The threshold question here is whether the EPA discriminated against Dage on the basis of his disability by adopting the new AWS Policy. Complaint, at ¶ 101.  Put another way, the Court's present task is to determine whether the new AWS Policy's requirement that all AWS participants submit medical evidence bi-annually to the EPA demonstrating a continued need to remain in the AWS program violates the Rehabilitation Act.  Despite some objection to the new

---

[15] *But cf. General Motors Corp. v. Tracy*, 519 U.S. 278, 298, 117 S. Ct. 811, 824 (1997) ("Conceptually, of course, any notion of discrimination assumes a comparison of *substantially similar entities*" (emphasis added)).

AWS Policy[16], it does not.

To be sure, all participants in the AWS program are subject to the *requirement* of a bi-annual re-certification, while non-disabled employees are not subject to the bi-annual re-certification requirement. *See* Answer, at ¶ 68. However, AWS program participants also receive the *benefit* of either working from home or from specially equipped EPA office space at Crystal Station *indefinitely*, Complaint, at ¶ 20, while non-disabled employees do not receive the same benefit. *See*, *e.g.*, Seed Affid., at 7 ("There is [an] agency flexi place policy which is designed to allow people to work at home *up to two days per week . . . .*" (emphasis added)). In this respect, the 1999 AWS Policy achieves "'evenhanded treatment'" as envisioned by controlling cases which have interpreted the Rehabilitation Act. *Olmstead*, 527 U.S. at 619 (quoting *Southeastern Community College v. Davis*, 442 U.S. 397, 410, 99 S. Ct. 2361, 2369 (1979)).

Additionally, Dr. Yanowitz has undercut Dage's argument that the 1999 AWS Policy is overly "burdensome" and has caused him, among other things, undue medical costs and other inconvenience. Complaint, at ¶¶ 101-02. Dr. Yanowitz did so by stating the following in pertinent part below:

> The needs and recommendations of Mr. Dage's work environment are *expected to remain the same for the duration of his employment*, and the workplace recommendations do not need to be re-evaluated unless Mr. Dage experiences significant symptoms which require additional measures. The two-year re-certification

---

[16] Seed and others apparently also share Dage's displeasure with the new AWS Policy. *See* Affidavit of Jennifer Seed, November 5, 2001 ("Seed Affid."), at 4 ("[The 2001 AWS Policy] is not beneficial or effective for the employee. [It] requires a medical expense every two (2) years . . . ."); Def.'s Memo, at 2 n.1 ("Plaintiff's EEO complaint was *one of a group of identical complaints simultaneously filed by other EPA employees* [] challenging the 1999 AWS policy." (emphasis added)). The Court has no additional information about these complaints other than the fact that they were remanded to the Agency.

> period specified by EPA policy for the Alternate Work Space
> program is sufficient.  In the interim, Mr. Dage may continue his
> *pattern of regular follow-up visits* to support symptomatic treatment
> of his allergies and asthma.

Yanowitz Letter, at 2 (emphasis added).  At bottom, the Court interprets the foregoing language,

which was provided to the EPA by Dage's own physician, to mean that his disability is indeed

chronic and perhaps getting worse.  The Court is therefore unclear how the new AWS Policy –

which requires bi-annual doctor's visits – has actually *injured* Dage given Dr. Yanowitz's

prognosis that Dage's "pattern of regular" doctor's visits to manage his chronic disability will

continue, at a minimum, "for the duration" of his employment. *Id*.; *cf. McConnell v. FEC*, 540

U.S. 93, 225, 124 S. Ct. 619, 707 (2003) ("[A] plaintiff must demonstrate an *injury in fact*, which

is concrete, distinct and palpable, and actual or imminent." (citation and internal quotation marks

omitted) (emphasis added)).

    For these reasons, Dage has failed to establish a genuine issue as to any material fact with

respect to the third claim.  Thus, this claim should likewise be dismissed.


**D.    Claim Four: Retaliation**

    Courts analyze retaliation claims using a variant of the burden-shifting framework first

set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct.

1817 (1973). *See Holbrook v. Reno*, 339 U.S. App. D.C. 4, 12, 196 F.3d 255, 263 (D.C. Cir.

1999); *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002).  The court of appeals has said:

> To establish a *prima facie* case of unlawful retaliation, the plaintiff
> must show: "'1) that [he] engaged in a statutorily protected activity;
> 2) that the employer took an *adverse personnel action*; and 3) that a
> causal connection existed between the two.'" *Morgan v. Federal
> Home Loan Mortgage Corp.*, 356 U.S. App. D.C. 109, 328 F.3d 647,
> 651 (D.C. Cir. 2003) (quoting *Mitchell v. Baldrige*, 245 U.S. App.

D.C. 60, 759 F.2d 80, 86 (D.C. Cir. 1985)).

*Singletary v. District of Columbia*, 359 U.S. App. D.C. 1, 5, 351 F.3d 519, 524 (D.C. Cir. 2003) (brackets in original) (emphasis added).  "Once this burden has been met," the defendant "must articulate a legitimate, nondiscriminatory reason for the personal action." *Newman v. University of District of Columbia*, 1989 U.S. Dist. LEXIS 12346, at *17 (D.D.C. October 18, 1989) (citation omitted).  Applying the three-pronged *McDonnell Douglas* test for retaliation to the facts of this case, Dage has failed to meet his burden.

In support of his retaliation claim, Dage makes the allegation below:

> [P]laintiff experienced a *reduction in responsibilities* that persisted for a long duration. Indeed, plaintiff claims that he was not merely assigned work below his grade level but that *all professional work was removed from him for a period of 17 months*. . . . [Defendant] claims that the reduction of plaintiff's work was the result of a reorganization and was merely temporary. . . . . Moreover, *plaintiff alleges that he was told by his supervisor Ms. Seed that he could obtain professional assignments if he worked in [the Federal Triangle complex]* . . . .  The following month, plaintiff, agreed, in order to save his career to be assigned a part-time office space in a building to where his organization was being relocated. . . . In doing so, plaintiff acted contrary to the recommendation of his doctor that it would be injurious to his health. [] In his request, plaintiff included a letter from his doctor that indicated the accommodations that should be made. . . . It was not until after plaintiff began to work part of each week at an office other than the AWS office that he was given substantive work. []
>
>                                       . . . .
>
> In addition, *plaintiff alleges that he was denied promotion based on the denial of professional work, training, and failure to provide adequate equipment and teleconferencing capabilities*.

Pl.'s Opp., at 25, 26-27 (emphasis added).

Dage's allegations of reduction in work responsibilities, the complete denial of

substantive work and of opportunities to compete for a promotion have been previously

addressed by the Court. *See supra*, ANALYSIS, II., B.  No material fact is in dispute regarding

these allegations. *Id.*  The only remaining allegation of potentially retaliatory conduct which the

Court can identify from Dage's pleadings is as follows.

By his own account, Dage engaged in the protected activity of sending the EPA

Administrator a letter on January 2, 1999 which discussed his concerns about the new AWS

policy. EEO Complaint, at 2.  Dage also requested a meeting with the Administrator. *Id.*

Approximately one month later, after the Administrator refused the requested meeting, the EPA

adopted the new AWS Policy without Dage's input. *See* Complaint, at ¶ 46.  Nonetheless, this act

by the Agency does not constitute an "adverse personnel action" under the law. *Singletary*, 359

U.S. App. D.C. at 5, 351 F.3d at 524.  In *Stewart v. Evans*, 348 U.S. App. D.C. 382, 275 F.3d

1126 (D.C. Cir. 2002), the court of appeals explained that an agency action is not "'an actionable

adverse action . . . unless there is a tangible change in [] duties or working conditions constituting

a material employment disadvantage.'" 348 U.S. App. D.C. 382, 390, 275 F.3d 1126, 1134 (D.C.

Cir. 2002) (quoting *Walker v. WMATA*, 102 F. Supp. 2d 24, 29 (D.D.C. 2000) (alterations in

original)).[17]

As with the above claim, then, the fourth claim should also be dismissed because no

genuine issue as to any material fact remains in dispute. The EPA is therefore entitled to

judgment as a matter of law.

---

[17]  Moreover, as explained *supra*, Dage has failed to establish that a doctor's visit *once every two years* for re-certification under the new AWS Policy, especially in light of his "pattern of regular" doctor's visits to manage his chronic disability, rises to the level of "a tangible change in the duties or working conditions constituting a material employment disadvantage[.]" *Stewart*, 348 U.S. App. D.C. at 340, 275 F.3d at 1134.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings, or in the

Alternative for Summary Judgment [#44] should be granted.  An appropriate Order accompanies

this Memorandum Opinion.

**Date: January 9, 2007**                                      **JOHN GARRETT PENN**
                                                               **United States District Judge**